U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

MAR 06 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES GREER and D & J TIRE, INC. | CIVIL ACTION NO. 08-869 |
| versus | JUDGE TRIMBLE |
| HERCULES TIRE & RUBBER CO., and LAWRENCE B. SEAWELL | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Defendants Hercules Tire & Rubber Company ("Hercules") and Lawrence B. Seawell

("Seawell") filed a motion to dismiss[1] pursuant to Fed. R. Civ. P. 12(b)(6) on October 7, 2008.

Finding that adjudication of the issues raised in defendants' motion necessarily involved matters

beyond the pleadings, this court issued an order[2] converting that motion to a motion for

summary judgment under Rule 12(d). In accordance with our order, the parties have briefed the

issues and have submitted summary judgment evidence in support of their arguments.

For the reasons expressed herein, the court finds that defendants' motion for summary

judgment in its favor should be **GRANTED**.

## I.      BACKGROUND

### *Relevant Facts*

Plaintiff James Greer ("Greer") is an "officer and agent" of plaintiff corporation, D & J

---

[1]R. 12.

[2]R. 24.

1

Tire, Inc. ("D & J").[3]  D & J is a privately-held corporation organized and domiciled in Louisiana.[4]  D & J was a co-op member and stockholder in Hercules,[5] a wholesale tire company owned by 33 common shareholders.[6]

The record reflects that Hercules engaged the services of Morgan Keegan & Company, Inc. ("Morgan Keegan") in September of 2004 and again in October of that year.[7]  The contracts executed between them contemplate that Morgan Keegan would conduct a business valuation of Hercules and "identify and approach selected strategic and financial buyers on behalf of [Hercules] and conduct due diligence on potential buyers."[8]  In other words, Morgan Keegan would determine the overall value of Hercules and shop it around to potential buyers.  An email dated January 14, 2005, Morgan Keegan reported that it was in receipt of "a dozen solid letters" of initial interest from such potential buyers.[9]

In a letter dated January 19, 2005 D & J informed Hercules that it no longer desired to maintain its "association" with Hercules and wished to redeem its remaining stock and apply the proceeds from that transaction to an outstanding balance of $360,787.72.[10]  Seawell, by letter

---

[3]R. 16 at p. 6.

[4]R. 7.

[5]R. 1-2 at ¶ 2.

[6]R. 27-4 at p. 1.

[7]R. 33-7 at 000211-219.

[8]Id. at 000214.

[9]R. 33-8 at 000558 (Exhibit "D" to plaintiff's memorandum in opposition to motion).

[10]R. 27-3, "Exhibit B."

dated February 2, 2005, acknowledged receipt of this letter and explained that Hercules had cancelled D & J's market territory per its request and that, in order to transact the redemption of stock also included in D & J's request, a Stock Power of Attorney (attached to the letter) must be executed and returned to Seawell.[11] The letter also explained that, "when hardship withdrawal requests are honored, they are always honored at 80% of book value."[12] The record reflects that Greer executed the Stock Power of Attorney on February 15, 2005.[13]

On February 17, 2005, Craig Anderson, Hercules' President at the time, presented D & J's request for redemption and Stock Power of Attorney to the board of directors via e-mail and/or facsimile. On February 21, 2005 a credit memo was issued by Hercules which applied the proceeds from the redemption of stock to D & J's outstanding balance.[14]

In February and March of 2005, Hercules seriously negotiated with several prospective buyers.[15] On March 4, 2005, Hercules' board of directors voted to move forward with the proposal by FdG Associates ("FdG"), granting them an "exclusive agreement to perform their due diligence with April 30th set as the target date for the sale of the company."[16]

Hercules' board of directors approved FdG's plan of merger on April 26, 2005 and, two

---

[11]R. 27-3., "Exhibit C."

[12]Id.

[13]R. 27-3, "Exhibit D."

[14]Id. at "Exhibit E."

[15]R. 36 at 000221.

[16]R. 27-3, "Exhibit F."

days later, presented the plan to shareholders along with its recommendation for approval.[17] The merger was executed on May 11, 2005.[18] On June 27, 2005, D & J contacted Hercules via letter and accused Seawell of securities violations and breach of fiduciary duty based on his failure to inform D & J of Hercules' intent to merge with F*d*G.[19]

Plaintiffs filed the above captioned suit on May 15, 2008.[20] Plaintiffs' complaint seeks recission of D & J's stock redemption, an award of damages equaling the difference between the price D & J was paid and what it would have been paid under the F*d*G merger, as well as costs and attorney fees.[21]

### *Applicable Standard*

The motion before the court requests summary judgment pursuant to Fed. R. Civ. P. 56. In ruling on such a motion, we must determine whether the "...pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any show that there is no genuine issue as to any material fact..."[22] A "material fact" is one which, given its resolution in favor of one party or another, might affect the outcome of the suit under applicable law.[23] An

---

[17]Id. at "Exhibit I."

[18]Id. at "Exhibit 1," ¶ 34.

[19]Id. at "Exhibit L."

[20]R. 1-2.

[21]R. 1-2 at ¶ 10.

[22]Fed. R. Civ. P. Art. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); American Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).

[23]Anderson, supra, 477 U.S. 242, 248.

issue is considered "genuine" when the evidence leaves open the possibility that a rational trier of fact might still return judgment in favor of the nonmoving party.[24]

Once the moving party has carried its burden of showing an absence of evidence to support the non-moving party's case, the burden shifts to the non-party to come forward with specific facts showing a genuine factual issue for trial.[25] "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that a genuine issue of material fact remains to be tried.[26] Evidence presented, whether in support of or in opposition to a motion for summary judgment, must be of such character that it would be admissible at trial.[27] Where both parties have presented contradictory evidence, the court will resolve all such controversy in favor of the non-moving party, viewing the facts and evidence in the light most favorable thereto. General averments will not suffice, however, in place of specific factual proofs, as the court will not assume the existence of any material fact issue not pled by the non-moving party.

If the moving party, here defendants, fails to demonstrate the absence of material fact questions or if plaintiffs, on the other hand, succeed in demonstrating the existence of such

---

[24]Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000), citing Anderson, supra, 477 U.S. 242, 248.

[25]Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[26]SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

[27]Fed. R. Civ. P. Art. 43(a); Roucher v. Traders & General Ins. Co., 235 F.2d 423, 424 (1956).

questions, the motion must be denied.[28]

## II. Analysis

The briefs before us indicate a disagreement between the parties concerning the nature of plaintiffs' claims. Defendants' motion asserts that plaintiffs' claims are shareholder claims for breach of fiduciary duty subject to the one (1) or two (2) year prescriptive periods applicable to such suits for damages against officers or directors of a corporation under La. R.S. 12:96.[29]

Defendants assert that D & J's letter to Hercules on June 27, 2005 evidences its awareness of defendants' alleged wrongful conduct as of that date, if not earlier, since the letter references a press release dated May 11, 2005.[30] Defendants argue that, even assuming the maximum allowable prescriptive period – two years from the date that the alleged act or omission should have been discovered – plaintiffs' claims against them prescribed on June 27, 2007.[31] Defendants point out that plaintiffs did not file suit against them until May 15, 2008.

Plaintiffs strenuously deny that their claims are prescribed, arguing that a portion of their claims for breach of fiduciary duty against Seawell arise out the Stock Power of Attorney executed between Greer and Seawell and not just Seawell's fiduciary duty as an officer of Hercules.[32] Plaintiffs assert that, as contract claims, their claims against Seawell for breach are

---

[28]Gonzales, supra, at *2, citing Taita Chem. Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377 , 388-89 (5th Cir. 2001).

[29]R. 27-4 at pp. 5-6.

[30]Id.

[31]Id.

[32]R.

personal actions subject to the ten year prescriptive period under La. Civ. C. Art. 3499.[33]

Additionally, plaintiffs assert that their claims against Seawell and Hercules for recission of the

stock redemption are subject to the five year prescriptive period under La. Civ. C. Art. 2032

pertaining to nullity of contracts.[34] Thus, plaintiffs argue, their claims based on the contract of

mandate are not prescribed.

The Stock Power of Attorney executed by the parties reads as follows:

> "I <u>James W. Greer</u>, hereby sell, assign and transfer unto The
> Hercules Tire and Rubber Company <u>14</u> shares of Common Stock
> standing in their name on the books of the said corporation
> represented by Certificate No. ____ herewith and do hereby
> irrevocably constitute and appoint LAWRENCE B. SEAWELL
> attorney to transfer the said stock on the books of the with-in-named
> Company with full power of substitution in the premises."[35]

Louisiana law defines mandate as "a contract by which a person, the principal, confers

authority on another person, the mandatary, to transact one or more affairs for the principal."[36]

As plaintiffs point out, a mandatary "is bound to fulfill with prudence and diligence the mandate

he has accepted," and is "responsible to the principal for the loss that the principal sustains as

a result of the mandatary's failure to perform."[37]

While the court accepts plaintiff's argument that the Stock Power of Attorney signed by

Greer on behalf of the shareholder, D & J, does constitute a contract of mandate under Louisiana

---

[33]R. 33 at pp. 12-14.

[34]<u>Id.</u>

[35]R. 27-3 "Exhibit D."

[36]La. Civ. C. Art. 2989.

[37]La. Civ. C. Art. 3001.

law, we do not find that Seawell breached his fiduciary duty under the mandate given its limited scope.

Recalling the correspondence between the parties, we find that the details of the transaction were agreed upon before Greer signed the mandate. D & J's letter to Hercules of January 19, 2005 requested that it be allowed to redeem its stock, designating the thing to be sold. By letter dated, February 2, 2005, Seawell, acting on behalf of Hercules, advised D & J of the terms of the sale, including the price (80% of book value). The court finds that D & J consented to the sale, as already negotiated between the parties, when it executed the Stock Power of Attorney. Moreover, the actual language of the Stock Power of Attorney affirms that the stockholder agreed to "sell, assign and transfer" the shares in question.

The court finds that the limited mandate given to Seawell was only to effect the actual transfer of the property upon consent of the board, as the terms and conditions of the sale had already been consented to by D & J. In other words, D & J had already agreed to a price per share upon redemption before it appointed Seawell as its mandatary. Accordingly, any omission by Seawell during the negotiation of the price per share can only give rise to a claim for breach of his ordinary fiduciary duty to shareholders as an officer of Hercules. Such claims are subject to, at most, a two (2) year prescriptive period under La. R.S. 12:96(A) or (B). As pointed out by defendants, plaintiffs filed this suit on May 15, 2008, more than two (2) years from its June 27, 2005 letter accusing defendants of wrongdoing. As such their claims are prescribed and defendants' motion to dismiss such claims with prejudice shall be granted.

Although, given our findings above, we need not address defendants' assertion that Greer lacks individual standing to maintain claims for breach of fiduciary duty against defendants, the court notes that it agrees with defendants as to this issue. While a corporation is considered a "person" under the law, it can only act through its officers, employees and agents.[38] Greer, acting as an officer on behalf of the true shareholder, D & J, executed the Stock Power of Attorney. Under that contract of mandate D & J, not Greer, was the principal. As discussed above, we find that the only claims once available to plaintiffs under the facts of this case were those arising out of D & J's status as a shareholder in Hercules. Were plaintiffs' claims to have survived defendants' prescription argument, the court still would have dismissed all claims by Greer based on the fact the he was never an individual shareholder.

## III.  CONCLUSION

The court has reviewed the law and argument advanced by the parties, as well as the summary judgment evidence in support thereof and finds that defendants' motion for summary judgment should be granted. Specifically, the court finds that plaintiffs' claims for breach of fiduciary duty against defendants arising out of the Stock Power of Attorney as a contract of mandate fail because the elements of the sale were perfected before Seawell became D & J's mandatary and because the mandate contemplated therein was limited in scope. We also find that any claims by plaintiffs for breach of fiduciary duty arising out of defendants' general fiduciary duty to their shareholders are prescribed under La. R.S. 12:96. Finally, were these claims to have survived, we find that plaintiff Greer lacks standing to maintain them because he was not the true principal in the contract of mandate and was never an individual shareholder in

---

[38]Kevin Associates, LLC v. Crawford, 03-211 (La. 1/30/04), 865 So.2d 34.

Hercules.

The court will issue a judgment dismissing plaintiffs' claims in accordance with our findings above.

**March 6, 2009**

_____
JAMES T. TRIMBLE, JR.
**UNITED STATES DISTRICT JUDGE**